LEONILDA COLÓN, demandante y apelante, *v.* LA COMISIÓN DE
INDEMNIZACIONES A OBREROS, demandada y apelada.

No. 3489.—*Visto:* Marzo 25, 1925.  *Resuelto:* Abril 6, 1925.

1. LEY DE INDEMNIZACIONES POR ACCIDENTES DEL TRABAJO—PERSONAS CON DERE-
CHO A SUS BENEFICIOS—SOCIO.—Un socio no tiene derecho a los beneficios de
la ley de indemnizaciones por accidentes del trabajo.

2. SOCIEDAD—LA RELACIÓN—CREACIÓN Y REQUISITOS—INTENCIÓN DE LAS PARTES.—
Si la relación de socios o de patrono y empleado existe, depende de la inten-
ción de las partes.

3. SOCIEDAD—LA RELACIÓN—CREACIÓN Y REQUISITOS—PARTICIPACIÓN EN LAS GA-
NANCIAS COMO COMPENSACIÓN POR SERVICIOS.—Cuando en un pequeño negocio
dos personas trabajan juntos, uno aportando todo el capital y los materiales
recibiendo 85 por ciento del precio obtenido por los artículos confeccionados
y el otro aportando su trabajo y recibiendo dos dollars por día además del
15 por ciento restante, la relación existente es la de socios y no la de patrono
y empleado.

SENTENCIA de *R. Díaz Cintrón,* J. (Ponce), desestimando la demanda,
sin costas.  *Confirmada.* .

*Martínez Nadal, Tormes & Colón,* abogados del apelante; *Attorney
General* y *C. Laugier Díaz,* abogados de la apelada.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

[1] La cuestión fundamental envuelta en este caso es si
el hijo de la demandante era un socio o un obrero en la em-
presa en que trabajaba cuando ocurrió el accidente que le
ocasionó la muerte.  La Comisión de Indemnizaciones deci-
dió que era un socio y que por tanto el caso no estaba com-
prendido en la ley sobre compensaciones a obreros.  Se apeló
a la Corte de Distrito de Ponce.  Oídas las pruebas, dicha
corte decidió de igual modo, y no conforme la demandante,
recurrió ante este tribunal.

[2, 3] Los testigos de la demandante sostienen que Ar-
turo Colón, la persona que falleció, trabajaba como obrero,
percibiendo un jornal de dos dólares diarios, del dueño de
la empresa, Pedro Guillermo Teissonier.  La corte no creyó
a los testigos de la demandante y basó su fallo en el testi-
monio de Teissonier, única persona que declaró por el de-
mandado.  Siendo ello así, y no existiendo motivos suficien-
tes para concluir que el juez errara al decidir el conflicto

de la evidencia en la forma en que lo hizo, examinaremos el dicho testimonio para ver si sostiene o no la sentencia recurrida.

Teissonier, se expresó, en resumen, así: Allá por el 3 de diciembre de 1923, Arturo Colón trabajaba en unión suya como socio en un negocio de fabricación de petardos. Colón nada aportó a la sociedad. El testigo aportó los materiales y sostiene que Colón era un socio porque él lo asoció dándole un quince por ciento de los beneficios. Tenía la fábrica en los terrenos de Manescau y él vendía los petardos. Cuando estaba en la fábrica, mandaba ''a todo el mundo: si dejaba a Arturo Colón, entonces mandaba Arturo Colón.'' En la fábrica había dos operarios. Después de vendidos los petardos, sacaba los gastos y del beneficio daba el quince por ciento a Colón. A la pregunta: ''¿Qué ocurrió en esa fábrica?'', contestó: ''Pues que estando trabajando Arturo Colón y yo explotó la mesa de Arturo Colón y se llevó la mía junto con la de él.'' Luego dijo: ''Pues sucede que yo trabajaba en la calle Victoria 110, hubo una denuncia contra José Teissonier y el capitán llamó a mi hermano para que no trabajara más en la población, entonces le pedí a Manescau un sitio para poner cuatro palos allí y un zinc para defendernos del sol y del agua y fuí donde Arturo Colón y lo llamé y le dije: yo voy a poner la fábrica allá ahora, si quieres venir conmigo yo te asocio conmigo, te doy un tanto por ciento y te doy dos pesos diarios.''

Sostiene, por último, que nada llegó a pagarle a Colón porque sólo trabajó dos días y que la casa donde se instaló la fábrica y que estaba formada por ''unos cines y cuatro palos,'' la fabricaron entre los dos, siendo los materiales del testigo.

Se deduce también de la declaración de Teissonier, que en época anterior Colón y él habían trabajado juntos en la misma forma, esto es, recibiendo Colón un tanto por ciento de las ganancias.

"La sociedad," dice el artículo 1567 del Código Civil revisado (Comp. 1911, p. 807), igual al 1665 del Código Civil español, "es un contrato por el cual dos o más personas se obligan a poner en común, dinero, bienes o industrias, con ánimo de partir entre sí las ganancias."

"Es decir, que," como expresa Manresa en sus Comentarios, tomo 11 (año 1905), página 243, "según los términos claros, precisos y concretos de la definición consignada en dicho artículo, el fin del contrato de sociedad, el móvil que impulsa a los socios a constituirla, es la utilidad o la ganancia que éstos esperan obtener del concurso de sus respectivas aportaciones."

"A falta de bienes y.de dinero, o en concurrencia con ellos," sigue diciendo el citado comentarista, tomo 11, páginas 257 y 258 de su obra, "la ley admite la aportación de la industria, es decir, de una cooperación activa, de un trabajo cualquiera, por parte del asociado. . . . .

"No debe confundirse, sin embargo, el contrato de sociedad en que hay un socio que aporta su trabajo o industria con la *locación de servicios,* porque, como dice el Sr. Sánchez Román, en el primero de dichos contratos, el socio industrial debe su trabajo por prestación social, pero con cierto carácter independiente y sin subordinación personal a los demás socios, y sólo como obligado respecto de la entidad social; mientras que en el segundo, hay una manifiesta subordinación del que se obliga a ciertos servicios respecto del otro contratante, y además, lo que percibe aquél es en el concepto de *salario* o *retribución,* y lo que recibe el socio industrial es, por el contrario, en el de *participación* de ganancias que le corresponde por su carácter de socio."

Sánchez Román, citado por Manresa, agrega: "Aún en el caso de que la merced de la locación de servicios consistiera en una participación en los frutos o resultados de ese trabajo, habría que estar siempre, para determinar si era locación o sociedad, a lo que resultara ser la expresa vo-

luntad y manifiesta intención de los contratantes.'' Vol. 4, Sánchez Román,—Derecho Civil—, pág. 505 (2da. ed.).

*Locación,* según la Enciclopedia Jurídica Española, tomo XXI, pág. 477, es el ''contrato de arrendamiento por lo que respecta al arrendador. . . . . Puede ser objeto el contrato, de arriendo de cosas, obras o servicios y se le designa en el Foro con la palabra *locación* para indicar el acto o actos de dar aquéllos en arrendamiento y *conducción* para indicar el de recibirlos en el mismo; de donde derivan los nombres de locador para el arrendador y conductor para el arrendatario. Este contrato es consensual, bilateral y ha de mediar precio en metálico o en parte de frutos, pues, de lo contrario, se convertiría en comodato.''

El caso concreto que estudiamos es de clasificación difícil. Nada consta por escrito. Sólo podemos penetrar en la intención de las partes por las manifestaciones de una de ellas. La circunstancia de haberse fijado un salario a Colón, la condición predominante de Teissonier en la dirección del negocio, en la venta de los petardos y en la liquidación final, parecen presentar un caso de locación de servicios. Por otro lado la pequeñez del negocio gráficamente mostrada por el local donde se fabricaban los petardos, la invitación de Teissonier a Colón y la aceptación de éste, tales como Teissonier las describe, y el trabajo de Teissonier y Colón juntos en el mismo local, si bien presentan a Teissonier como hombre de mayores recursos e iniciativas que Colón y como el verdadero director de la empresa, no excluyen la idea de la sociedad en la cual Teissonier puso bienes y trabajo y Colón trabajo solamente recibiendo una cantidad diaria en atención a su pobreza. Generalmente al constituirse las sociedades, fíjase a los socios que activamente trabajan un sueldo y no por ello pierden los que lo reciben su condición de socios.

Bajo tales circunstancias, habiendo llegado la comisión primero y la corte de distrito después a la conclusión de la existencia de una sociedad, no nos sentimos inclinados a va-

riar' sus juicios en ausencia de una demostración cumplida de que son erróneos.

· La jurisprudencia citada por la apelante no es aplicable. Aquí no se trata de una persona que dueña de acciones de una corporación o desempeñando algún cargo en su directiva, sea independientemente empleada por la corporación para realizar algún trabajo mediante remuneración. Aquí dos hombres acostumbrados a fabricar petardos se asociaron para emprender de nuevo el negocio poniendo uno los materiales y ambos su trabajo personal, percibiendo el que únicamente aportaba el trabajo personal dos dólares diarios y repartiéndose finalmente las ganancias en la proporción de un ochenta y cinco por ciento para el que aportó bienes y trabajo y el resto para el otro.

Quizá sea conveniente decir que este caso es completamente distinto al de los trabajadores que emplean las centrales azucareras y a los cuales las corporaciones bonifican a su voluntad al final de la zafra de acuerdo con las ganancias obtenidas, y que por tanto la jurisprudencia que se establece al confirmarse la sentencia apelada, no tiene el alcance que insinuó el abogado de la parte apelante en el acto de la vista del recurso que podría tener.

*Debe confirmarse la sentencia apelada.*